UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-05316 RGK (RZx) | Date | August 29, 2013 |
|---|---|---|---|
| Title | K TECH TELECOMM., INC. v. BLONDER TONGUE LAB., INC. et al. | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams (not present) | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Plaintiff's Motion for Partial Summary Judgment (DE 67); Defendants' Motion for Partial Summary Judgment (DE 128).

## I. INTRODUCTION

On June 19, 2012, K Tech Telecommunications, Inc. ("Plaintiff") filed an action for direct patent infringement against four defendants: (1) Blonder Tongue Laboratories, Inc. ("Blonder Tongue"); (2) R.L. Drake Holdings, LLC ("Drake Holdings"); (3) R.L. Drake, LLC ("Drake"); and (4) RLD '69, LLC ("RLD69") (collectively "Defendants") under 35 U.S.C. § 271(a).

Drake Holdings' parent company is Defendant Blonder Tongue, and the parties will be referred to collectively as the "BT Defendants." Plaintiff named RLD69 and Drake as separate defendants in the Complaint. In their Opposition, it appears that these two defendants are one and the same, and Drake is the former name of RLD69. RLD 69 and Drake will be collectively referred to as "RLD."

Plaintiff and Defendants have both moved for Summary Judgment. Plaintiff seeks partial summary judgment that Defendants' products directly infringe three of Plaintiff's four patents. Plaintiff seeks partial summary judgment on Defendants' affirmative defenses of obviousness

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-05316 RGK (RZx) | Date | August 29, 2013 |
|---|---|---|---|
| Title | K TECH TELECOMM., INC. v. BLONDER TONGUE LAB., INC. et al. | | |

and anticipation. Defendants seek partial summary judgment that their products do not infringe Plaintiff's three patents and on their invalidity defenses of obviousness and anticipation.

For the following reasons, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment and **GRANTS** Defendants' Motion for Partial Summary Judgment that Asserted Patents are invalid.

## II.   FACTUAL BACKGROUND

Plaintiff owns U.S. Patent Nos. 6,785,903 ("the '903 Patent"), 7,481,533 ("the '533 Patent"), 7,761,893 ("the '893 Patent"), and 7,984,469 ("the '469 Patent"). The '903, '533, and '893 Patents are the subject of the present motions, and are collectively referred to as "Asserted Patents." The Asserted Patents, entitled "Digital Television Translator with PSIP Update," describe related systems and methods for updating the channel information contained in digital television signals. The filing date of the earliest patent, the '903 Patent, is April 5, 2000.

Defendants are either the former or current owners of products which Plaintiff alleges infringe the Asserted Patents. In February 2012, RLD sold all or substantially all of its assets to co-defendants Drake Holdings and its parent company, Blonder Tongue.

As to RLD, this motion involves four allegedly infringing products: (1) MQM6000L, (2) MQM1000, (3) MEQ1000 DTD/DTD 1000, and (4) DQT1000 SGH Dual. Plaintiff alleges that RLD's MQM 6000L product literally infringes Claims 1 and 10 of the '903 patent[1]; Claims 1, 2, and 3 of the '533 patent; and Claims 1, 9, 13, 14, and 15 of the '893 patent. Plaintiff alleges that the remaining three RLD devices (MQM1000, MEQ1000 DTD/DTD 1000, and DQT1000 SGH Dual) infringe on Claims 1 and 10 of the '903 patent; Claims 1, 2, 3, 11, and 12 of the '533 patent; and Claims 1, 9, 13, 14, and 15 of the '893 patent.

As to BT Defendants, the motion involves 13 products in the DQM series, as well as the MUX-2D-QAM, the MUX-2A-QAM, and the MUX-12A-IP. Plaintiff alleges that the 13 DQM

---

[1] Plaintiff's Second Amended Complaint alleged that some of Defendants' Accused Devices also infringed Claims 5 and 8 of the '903 Patent. Plaintiff has withdrawn that allegation. (Pl.'s Second Reply in Opp. to Def.'s Mot. Summ. J.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-05316 RGK (RZx) | Date | August 29, 2013 |
|---|---|---|---|
| Title | K TECH TELECOMM., INC. v. BLONDER TONGUE LAB., INC. et al. | | |

products and the MUX-2D-QAM literally infringe Claims 1 and 10 of the '903 Patent; Claims 1, 2, 3, 11, and 12 of the '533 Patent; and Claims 1, 9, 13, 14, and 15 of the '893 Patent. Plaintiff alleges that the MUX-2A-QAM literally infringes Claims 1 and 10 of the '903 Patent; Claims 1,2, 3, 11, and 12 of the '533 Patent; and Claims 1, 9, 13, 14, and 15 of the '893 Patent. Plaintiff alleges that the MUX-12A-IP literally infringes Claim 1 of the '903 Patent; Claims 1, 2, 3, and 11 of the '533 Patent; and Claim 1, 9, 13, and 15 of the '893 Patent.

Under FCC rules, digital television signals must comply with the Advanced Television Specification Standards ("ATSC"). (Pierce Decl. ¶ 9 and Ex. G.) The ATSC standards govern, among other things, what information is contained in a digital transmission and how that information is arranged. *Id*. In December of 1997, ATSC approved standard A/65, defining Program and System Information Protocol ("PSIP") for digital television. *Id*. PSIP is a set of data tables contained in a digital transmission stream. *Id*. PSIP includes a Virtual Channel Table ("VCT") containing a list of all channels available in the transmission stream, as well as attributes of the channels like their major and minor channel number and carrier frequencies. *Id*.

The Asserted Patents describe various methods and systems for changing PSIP's VCT data, including errors in major and minor channel numbers. Plaintiff's invention consists of a digital television translator for receiving a digital transport stream with original PSIP data. A PSIP "update module" updates the original PSIP data in the stream with new PSIP data. Once the data has been updated, a digital television modulator converts the updated stream into a second digital television signal. All of the Asserted Patents relate to this basic invention.

At the time Plaintiff filed for the '903 Patent on April 5, 2000, a number of similar methods and technologies existed for modifying data in digital transmissions. U.S. Patent No. 6,438,171 [the "Cartwright Patent"] had been filed on November 14, 1997. (Pierce Decl. Ex. K.) It describes a process and apparatus for modifying tables of data in a digital transport stream. (*See id*. at col. 4 ll. 14-25.) There is evidence that at least two companies, Zenith and DiviCom, recognized the need for a translator capable of modifying PSIP after the adoption of the ATSC A/65. Both companies purportedly built and shipped devices capable of modifying PSIP data prior to the April 5, 2000. (*See* Frahm Decl.; Pierce Decl.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-05316 RGK (RZx) | Date | August 29, 2013 |
|---|---|---|---|
| Title | K TECH TELECOMM., INC. v. BLONDER TONGUE LAB., INC. et al. | | |

### III. JUDICIAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant summary judgment only where "there is no genuine issue as to any material fact and [] the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Upon such a showing, the court may grant summary judgment "on all or part of the claim." Fed. R. Civ. P. 56(a).

To prevail on a summary judgment motion, the moving party must show that there are no triable issues of material fact as to matters upon which it has the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party needs to show only that there is an absence of evidence to support the non-moving party's case. *See id.* at 326.

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324.

### IV. DISCUSSION

Defendants argue for summary judgment on grounds that the Asserted Patents are invalid as (1) anticipated by prior invention under Section 102(g)(2); and (2) as obvious under Section 103. Plaintiff argues that summary judgment should be granted in its favor because Defendants' products literally infringe the Asserted Patents. The parties propose different constructions of the Asserted Patents' claims. For the reasons discussed below, Defendants' affirmative defense of obviousness is dispositive of the parties' motions, even assuming Plaintiff's proposed "plain language" construction of the Claims.

#### A. **Plaintiff's Date of Invention For All Patents Will Be Presumed To Be No Earlier Than April 5, 2000**

If the patentee fails to offer evidence showing that he invented prior to the filing date, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-05316 RGK (RZx) | Date | August 29, 2013 |
|---|---|---|---|
| Title | K TECH TELECOMM., INC. v. BLONDER TONGUE LAB., INC. et al. | | |

patentee's filing date will be presumed to be the date of invention. *See, e.g., Loral Fairchild Corp. v. Matsushita Elec.*, 266 F.3d 1358, 1361 (Fed. Cir. 2001). Plaintiff has not produced any evidence suggesting that the patentee, Mr. Kuh, invented any of the subject matter of the Asserted Patents earlier than April 5, 2000. While Plaintiff asserts that the invention date was "about May 1, 1999," Plaintiff cites to no evidentiary support for this date. (Pl.'s Reply Mot. Summ. J. 10.) As such, the Court presumes that the April 5, 2000 filing date of the '903 Patent is the date Mr. Kuh invented. For purposes of this Order, the Court further presumes Mr. Kuh invented the subject matter of the '533 and '893 Patents as early as April 5, 2000.

    **B.    Defendants' Affirmative Defense of Invalidity: Obviousness**

Defendants argue that the Asserted Patents are invalid as obvious under Section 103 in light of the Zenith and DiviCom prior art, the Cartwright Patent, and the ATSC A/65 standards. For the reasons outlined below, the Court finds that Defendants have made out a prima facie case that the '903, '533, and '893 Patents are invalid as obvious. The court further finds that Plaintiff has failed to point to a genuine issue of material fact bearing on Defendants' obviousness defense.

        1.    *Obvious Inventions Are Unpatentable*

"[A] district court can properly grant, as a matter of law, a motion for summary judgment on [patentability] when the factual inquiries into obviousness present no genuine issue of material facts." *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed.Cir.1991). Under Section 103, claims are invalid if they are obvious in light of the prior art. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007). Prior art is "knowledge that is available, including what would be obvious from it, at a given time, to a person of ordinary skill in the art." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1402 (Fed.Cir.1997). An invention is obvious if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 USC § 103. In analyzing obviousness, courts are required to assess the scope and content of the prior art, differences between the prior art and the claims at issue, and the level of ordinary skill in the pertinent art. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 407 (2007). Courts may also assess secondary considerations like commercial success, long felt but unsolved

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-05316 RGK (RZx) | Date | August 29, 2013 |
|---|---|---|---|
| Title | K TECH TELECOMM., INC. v. BLONDER TONGUE LAB., INC. et al. | | |

needs, and failure of others. *Graham*, 383 U.S. at 17-18. Prior invention in this country by one who has not suppressed or concealed is prior art for purposes of the obviousness standard of Section 103. *E.I. du Pont de Nemours & Co. V. Phillips Petroleum Co.*, 849 F.2d 1430 (Fed. Cir. 1988).

An alleged infringer must prove invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011). On a motion for summary judgment, once a challenger has presented a prima facie case of invalidity, the patentee bears the burden of going forward with rebuttal evidence giving rise to a genuine issue of material fact bearing on the defense. *See Apotex USA, Inc. v. Merck & Co., Inc.*, 254 F.3d 1031, 1037 (Fed. Cir. 2001); *Innovative Scuba Concepts, Inc. v. Feder Industries, Inc.*, 26 F.3d 1112, 1115 (Fed. Cir. 1994) (citation omitted).

    2.  Graham *Factor One: The Scope and Content of the Prior Art*

Defendants assert that the prior art includes products DiviCom and Zenith commercialized, the Cartwright Patent, and the ATSC A/65 standards. That the Cartwright Patent and ATSC A/65 standards are prior art is not seriously disputed. For the reasons that follow, the Court finds that the Zenith and DiviCom products are prior art bearing on Defendants' obviousness defense.

    a.  *The Zenith Product Is Prior Art Disclosing PSIP Translation*

Defendants have produced evidence that Zenith invented a PSIP translator prior to the presumptive invention date of the Asserted Patents. This evidence includes the sworn declaration of Timothy Frahm, the former Director of Zenith's Broadcast Products Group. (Frahm Decl.) According to Mr. Frahm, Zenith began working on a "PSIP Fixer" that allowed for remapping of the virtual channel tables in a television broadcast translator in February of 1999. *Id*. A detailed internal Zenith diagram from March of 1999 identifies a "PSIP Fixer for Terrestrial Broadcast 1Q00 Translator." (*Id*. and Ex. C) Mr. Frahm's Declaration states that Zenith marketed and sold a later version of the PSIP Fixer in March of 2000, prior to the April 5, 2000 filing date of the '903 Patent. (Frahm Decl. ¶ 8.) An internal Zenith document showing a shipment of a product labeled "DTVTRANS-4" to LG Electronics on March 29, 2000 corroborates this. (Frahm Decl. Ex. A.) According to Mr. Frahm, the DTVTRANS-4 sold in March of 2000 was an ATSC PSIP

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-05316 RGK (RZx) | Date | August 29, 2013 |
|---|---|---|---|
| Title | K TECH TELECOMM., INC. v. BLONDER TONGUE LAB., INC. et al. | | |

Enhanced VSB Translator, for which development can be traced back to February of 1999. (Frahm Decl. ¶ 7.) The press release for this translator confirms that it was capable of changing channel information in the Virtual Channel Table. (Frahm Decl. Ex. B.)

Plaintiff has not offered evidence rebutting Defendants' evidence that Zenith sold an ATSC PSIP Enhanced VSB Translator on March 29, 2000. Nor has Plaintiff offered any evidence that the product Zenith shipped was incapable of modifying PSIP data. Plaintiff rightly notes that the Zenith documents attached as exhibits to the Frahm and Kail Declarations are unpublished and, as such, are not prior art. However, Defendants assert that the actual product Zenith shipped is prior art, not Zenith's confidential documents. The Zenith exhibits merely corroborate Mr. Frahm's account of the properties of the shipped product. Mr. Frahm's assertion that the PSIP translator could, in fact, translate PSIP when it was shipped is therefore undisputed. Plaintiff also argues that there is a genuine dispute as to whether Zenith suppressed or concealed the device depicted in the diagrams. Plaintiff contends that, because Defendants have not produced clear and convincing evidence that Zenith sold the specific device depicted in the diagram, it raises an inference of suppression or concealment of the *depicted device*. Plaintiff again misconstrues the nature of Defendants' showing. Even if Zenith never sold a device conforming exactly to the diagram, this would not rebut Defendants' clear and convincing evidence that Zenith rapidly developed and publicized a PSIP translator capable of modifying PSIP data. Whether that PSIP translator conformed exactly to the device depicted in the diagram is immaterial.

        b.     *The DiviCom Product Is Prior Art Disclosing PSIP Modification*

Defendants have also produced evidence that DiviCom invented and sold a PSIP translator prior to the April 5, 2000 invention date of the Asserted Patents. In the Declaration of Howdy Pierce, a former Program Manager, Engineering Director, and Director of Sales for Divicom, Mr. Pierce asserts that Divicom incorporated a product called the PSIP Generator into the then-shipping MN-20 Multiplexer in 1998. Pierce Decl. ¶ 21. The product was designed to receive an incoming stream with a virtual channel table and subsequently generate an outgoing stream with a different virtual channel table. *Id*. Several internal DiviCom documents support Mr. Pierce's contentions. *See, e.g.,* Pierce Decl. Ex. C.

In opposition, Plaintiff has produced no evidence rebutting Defendants' clear and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-05316 RGK (RZx) | Date | August 29, 2013 |
|---|---|---|---|
| Title | K TECH TELECOMM., INC. v. BLONDER TONGUE LAB., INC. et al. | | |

convincing showing that DiviCom sold the PSIP Generator prior to April 5, 2000. Nor has Plaintiff produced evidence that rebuts Mr. Pierce's account of the properties of the PSIP Generator. Plaintiff seeks to discredit the DiviCom documents, but has not produced any evidence about the actual product DiviCom sold. The documents contained in the exhibits are not the prior art on which Defendants' invalidity defense rests. As such, there is no genuine issue of material fact bearing on whether the DiviCom PSIP Generator is prior art.

        c.     *The Cartwright Patent Discloses A Method For Modifying Data Tables in Digital Transmissions*

The Cartwright Patent discloses a method for modifying data tables in digital transmissions. The abstract of the Cartwright Patent conveys the subject matter the patent discloses:

> "Tables of data included in a digital stream of encoded data, e.g., a digital transport stream of a digitally compressed television signal, are modified. The tables of data extracted from the stream and the extracted tables are processed to identify data that are to be dropped. A filter is used to filter out the identified data and new local data is entered into the extracted tables to replace dropped data and thereby form modified tables of data. The filtered stream is multiplexed with the modified tables of data to form an output digital stream. The constantly updated tables in the input stream are modified only in respect of the local changes and the updates are passed through to the output stream." Def.'s Ex. J.

The Cartwright Patent specifically teaches that modifying data tables in this way can prevent conflicts in channel assignments. *Id*. at col. 1 ll. 41-54; col. 2 ll. 7-12, 25-33. The Cartwright Patent does not explicitly disclose modification of PSIP data because it was filed prior to the ATSC A/65 standard.

        3.     <u>Graham *Factor Two: Differences Between The Prior Art And The Claims Of The Asserted Patents*</u>

Even if the prior art does not contain references that individually disclose every limitation of the Asserted Patents, there is nonetheless clear and convincing evidence that, taken

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-05316 RGK (RZx) | Date | August 29, 2013 |
|---|---|---|---|
| Title | K TECH TELECOMM., INC. v. BLONDER TONGUE LAB., INC. et al. | | |

as a whole, the prior art contains all of the limitations of the Asserted Patents. The Cartwright Patent discloses a method for modifying data in transport streams that closely resembles the methods claimed in the Asserted Patents. Indeed, a limitation-by-limitation comparison of the Asserted Patents with the Cartwright Patent shows that the Cartwright Patent alone contains all but a handful of the Asserted Patents' limitations, largely arranged in the same ways. Some of the absent limitations include common signal processing components like modulators (Claim 1 of the '903 Patent; Claim 11 of the '533 Patent) and amplifiers (Claim 10 of the '903 Patent; Claim 12 of the '533 Patent). The most salient difference between the Cartwright Patent and the Asserted Patents is the Cartwright Patent's failure to disclose, specifically, modification of ATSC A/65 PSIP data. However, the other prior art references do disclose modification of PSIP data. As outlined above, Plaintiff has not pointed to any facts contradicting Defendants' evidence that the Zenith and DiviCom references translated PSIP data.

    4.    <u>Graham *Factor Three: The Ordinary Skill in the Art*</u>

Plaintiff and Defendants do not explicitly dispute the level of ordinary skill in the art. However, drawing all reasonable inferences in favor of Plaintiff, the ordinary skill in the art related to digital signal transmission would at least include a working knowledge of the common components associated with the field. These components include modulators and amplifiers. It would also include, at minimum, knowledge of how to incorporate mandatory technical specifications like the ATSC A/65 standards into signal transmission devices.

    5.    <u>*Assessment Of The* Graham *Factors*</u>

"Determination of obviousness under 35 U.S.C. § 103 is a legal conclusion based on underlying facts." *In re Kumar*, 418 F.3d 1361, 1365 (Fed. Cir. 2005). Defendants have shown by clear and convincing evidence that the prior art references collectively disclose all of the limitations of the Asserted Patents. The sole disputed question is whether, as a matter of law, it would have been obvious to one skilled in the art to combine and arrange them as they were in the Asserted Patents. For the reasons that follow, the Court finds that it would have been obvious to do so.

A "combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-05316 RGK (RZx) | Date | August 29, 2013 |
|---|---|---|---|
| Title | K TECH TELECOMM., INC. v. BLONDER TONGUE LAB., INC. et al. | | |

418 (2007). The Asserted Patents merely combine the insights of the Cartwright Patent with a new, mandatory technical standard, the ATSC A/65 standard. Defendants have produced undisputed evidence that both DiviCom and Zenith understood that this standard would need to be incorporated into commercial products for the American market. The fact that both of these companies recognized the specific problem Mr. Kuh sought to address, and its solution, is evidence in itself that the Asserted Patents were obvious. But both companies went further. It is undisputed that the companies produced devices capable of translating PSIP data prior to the presumed date of invention of the Asserted Patents. Even if it hadn't already been obvious to combine the teachings of the Cartwright Patent with the new ATSC standard, the devices Zenith and DiviCom produced made it obvious. Other limitations of the Asserted Patents describe minor variations involving the addition of common signal processing and broadcasting components to the existing technology. In light of the undisputed facts, these additions, too, would have been obvious.

For these reasons, the Court finds that the undisputed facts render the Asserted Patents obvious as a matter of law.

**V.    CONCLUSION**

For the foregoing reasons, the Court grants Defendants' Motion for Partial Summary Judgment that the '903, '533, and '893 Patents are invalid. Plaintiff's Motion for Summary Judgment is denied.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | RGN |